**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **CR. NO. 03-71-02ML** |
| | ) | |
| **CHARLES ISLER** | ) | |
| | ) | |

**MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM**

Now comes the defendant, Charles Isler, by and through his Attorney, Terence Livingston and hereby submits the following Motion for Downward Departure.

In January, 2005, the United States Supreme Court in United States v Booker, 543 U.S. 220 (2005), held that the federal Sentencing Commission Guidelines were advisory only. The Supreme Court went on to require that the sentencing court consider the Guideline ranges, but permits the sentencing court to tailor the sentence in the light of other Section 3553(a) sentencing factors as well.

The "norm" in this case pursuant to Booker would be a sentence of 210-262 months as detailed later in this memo. However that does not end the analysis as we have to then take into account and discount the sentence due to a number of factors previously discouraged under the "mandatory guidelines" scheme. First of all as later outlined in this memorandum, the jury has not decided beyond a reasonable doubt that Mr. Isler has been convicted of other violent felonies or drug crimes as required by the "career offender" provision. If the court determines that prior convictions need to be proved to a jury beyond a reasonable doubt then the norm would be 21-27 months. Then we need to depart downward from there.

Although under Booker a sentencing judge is required to consult the Guidelines and to take them into account, the Guidelines merely constitute a generalized norm and are but one of the sentencing factors. Since all sentences relate to an individual human person, and not to a norm, a sentence must be shaped to the individual defendant involved in the particular crime **[**7]** by considering the individual sentencing factors. Thus, the Court in imposing an appropriate sentence shall follow the sentencing procedure, by modifying the norm as influenced by its full examination of the individual defendant's personal characteristics, family responsibilities, medical and mental condition, criminal record and the particular circumstances surrounding the crime and imposing a sentence within the range set by Congress, after deep reflection informed by its experience in life and in the law.

The vast majority of cases that have dealt with the Federal Guidelines since Mr. Isler was sentenced have held that sentencing under the Guidelines violates the Sixth Amendment right to jury trial as interpreted in cases from Jones v. United States, 526 U.S. 227 (1999), to Apprendi v. New Jersey, 530 U.S. 466 (2000), to Ring v. Arizona, 536 U.S. 584 (2002), to Blakely v. Washington, 542 U.S. _, 124 S. Ct. 2531 (2004). See United States v. Booker, 125 S. Ct. 738, 748-50 (2005). Therefore, as modified, the Federal Sentencing Act . . . makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, see 18 U.S.C. § 3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." Id. at 757.

Sentencing courts must now consider all of the goals and factors set forth in 18 U.S.C. § 3553(a), not just the guidelines and policy statements in the Guidelines Manual. See Booker, 125 S. Ct. at 757, 764, 766, 767, 768. See also, e.g., United States v. Crosby, 397 F.3d 103, 111-12 (2d Cir. Feb. 2, 2005); United States v. Hughes, 401 F.3d 540, 546 (4th Cir. Mar. 16, 2005).

The new mandatory principle is a limiting one: The sentence must be "**sufficient, but not greater than necessary**," to fulfill the need for the sentence imposed –"

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Factors the court "shall consider" in determining a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing:

(1) "the nature and circumstances of the offense" and "the history and characteristics of the defendant"
(2) "the kinds of sentences available"
(3) the advisory guidelines
(4) "any pertinent policy statement" in the Guidelines Manual, which includes departures
(5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"
(6) "the need to provide restitution to any victims of the offense"

The defendant's work history and family life has been discussed in the PSR and I incorporate that part of the PSR into this memorandum. In addition, Mr. Isler's upbringing was not an easy one. He saw somebody get murdered in Dorchester, MA when he was just 13 years old. His father was ill while he was growing up and he and his mother had to shoulder the responsibilities of raising the family. His mother made the children get jobs after school. He played basketball for Central High School for three years. He tried to keep away from the "negative" influences but was unable to.

He has been gainfully employed at a number of jobs throughout his life, both as an adult and juvenile, other than when he has been incarcerated. Because of lack of any professional skills he has not had any what we would call "high paying"

jobs. He has had to support 7 children by way of Family court orders and there was never enough money and he made a poor choice to sell small amounts of drugs to supplement his income. He knows it was wrong. He was taught by his parents at a young age it was wrong and he has paid for it. Through loss of time with his family and his liberty. He has learned a lot since he was sentenced by Your Honor.

He has consistently prior to his incarceration supported his children; I know that because I represented him in the Family Court. The mothers of his children are supportive of him. He helps his children with emotional support and extra financial support outside the orders of the Family Court. His children who range in age from 17 years old to 9 years old will also suffer the loss of their father due to this lengthy incarceration. He has a 16 year old daughter who became pregnant while he was incarcerated. His grandchild will be older than his daughter is currently when he gets out. The question Your Honor has to decide is Mr. Isler worthy of leniency and what sentence is sufficient but not greater than necessary to fulfill the need for the sentence imposed.

Mr. Isler is 37 years old. The sentence of 10 years is more than sufficient to attain the goals of an appropriate sentence especially in light of his co-defendant's sentence for similar conduct.

In order to facilitate the mandates of Booker, the Sentencing Commission advocates a three-step approach which would require a departure analysis in every case: (1) Apply the Sentencing Guidelines to establish the advisory sentencing range; (2) Determine if a traditional departure applies; (3) Determine if a non-guideline sentence, which the Commission calls a "variance," is warranted under § 3553(a).

The Court is now free to consider mitigating factors that once were discouraged by the Courts. Mitigating factors that were previously discouraged except under certain circumstances or for certain purposes should be considered more broadly to the extent they bear on the sentencing considerations found in section 3553(a). Those are age, education and vocational skills, mental and emotional conditions not meeting the diminished capacity standard, physical condition or appearance, employment record, family ties and responsibilities, military, civic, charitable or public service. See U.S.S.G. §§ 5H1.1-6, 11. Likewise, the limitations on each of the generally encouraged mitigating factors in U.S.S.G. §§ 5K2.10 (victim's conduct), 5K2.11 (lesser harms), 5K2.12 (coercion and duress), 5K2.13 (diminished capacity), 5K2.16 (voluntary disclosure), 5K2.19 (post-sentencing rehabilitation efforts), 5K2.20 (aberrant behavior), and 5K2.23 (discharged terms of imprisonment) should no longer bar consideration of these factors to the extent they are relevant under section 3553(a).

Post-Booker cases illustrate that the court may consider formerly discouraged factors, or facts that would not have met pre-Booker standards for departure, to impose a lower sentence. See, e.g., United States v. Spigner, 416 F.3d 708, 711-13 & n.1 (8th Cir. 2005) (health problems); United States v. Antonakopoulos, 399 F.3d 68 (1st Cir. 2005)

(that defendant was caretaker for brain damaged son may be considered under 3553(a) though there were alternative means of care and thus not ground for departure); United States v. Haidley, 400 F.3d 642, 645 (8th Cir. Mar. 16, 2005) (that defendant used embezzled money for her child's high medical expenses, and her "family situation, which included two young children at home" (neither of which rose to the level of departure) were both "factors which can be considered under 3553(a)(1) ('the nature and circumstances of the offense and the history and characteristics of the defendant').

The defendant's age may warrant a lower sentence if, because of his age, the resulting sentence is greater than necessary to reflect the seriousness of the offense. See United States v. Lewis, 406 F.3d 11, 21-22 (1st Cir. 2005) (remanding for re-sentencing where district court expressed concern that the guideline sentence of 319 months amounted to a life sentence for a defendant who was 38 years old).

As to defendants over forty, Mr. Isler is 37 years old, the risk of recidivism drops dramatically, lessening the need to protect the public from further crimes of the defendant under 3553(a)(2)(C). See United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines at 12 ("Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% over age 50.), available at http://www.ussc.gov/publicat/Recidivism_General.pdf.

Booker, like Apprendi and Blakely, expressly creates an exception from its Sixth Amendment holding for facts of prior conviction, stating, "Any fact *(other than a prior conviction)* which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at 756 (emphasis added). But this exception is not consistent with the broad reasoning of these three cases, which would seem to require that *any fact* increasing the sentence range must be either admitted or proven to the jury. See Apprendi, 530 U.S. at 499-523 (Thomas, J., concurring).

In Shepard v. United States, 125 S. Ct. 1254 (2005), decided after Booker, the Court strongly suggested that the prior conviction exception should be viewed narrowly and that Almendarez-Torres v. United States, 523 U.S. 224 (1998), on which this exception is based, may soon be overturned.[1] Particularly in view of Shepard, defense

---

[1] This followed the troubled history of Almendarez-Torres, in which the sentencing factors/elements distinction upon which the Court relied in that case has now been abandoned:

In Almendarez-Torres, the Court relied on a distinction between elements and sentencing factors to hold that a prior conviction that raised the maximum sentence was not required to be pled in the indictment. 523 U.S. at 226-27, 246-47. The dissent, written by Justice Scalia, would have construed the penalty provision as an element in order to avoid the "genuinely doubtful" question whether the Constitution permits an increase in the maximum punishment based on a fact,

counsel must be sure to object to any statutory sentencing enhancements based on prior convictions that were not admitted or proven to the jury.

Although the defendant in Shepard did not challenge Almendarez-Torres or the prior conviction exception, parts of Shepard make clear that five Justices would support overturning that decision and eliminating the exception. And until that happens, Shepard also makes clear that Almendarez-Torres should be read very narrowly to apply only to facts established by the record of conviction.

---

whether designated as an element or a sentencing factor, that has not been charged in an indictment and proved to a jury beyond a reasonable doubt. Id. at 251-60.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Court reserved judgment on the validity of Almendarez-Torres, since a prior conviction enhancement was not at issue, but noted that Almendarez-Torres "represents at best an exceptional departure from the historic practice [of requiring pleading and proof of factors increasing statutory maximums]," id. at 484, 487, emphasized that no question regarding jury trial or standard of proof arose in Almendarez-Torres, and explicitly stated that it may have been incorrectly decided and should be narrowly applied. Id. at 488-489. Furthermore, Justice Thomas in a concurring opinion renounced his swing vote in Almendarez-Torres. Apprendi, at 520-21 (Thomas, J., concurring).

In Ring v. Arizona, 536 U.S. 584 (2002), the Court explicitly abandoned any distinction for constitutional purposes between elements and sentencing factors. Id. at 605, 609.

In Dretke v. Haley, 124 S. Ct. 1847 (2004), the Court applied the doctrine of constitutional avoidance to Almendarez-Torres, stating: "Respondent contends that Almendarez-Torres should be overruled or, in the alternative, that it does not apply because the recidivist statute at issue required the jury to find not only the existence of his prior convictions but also the additional fact that they were sequential. These difficult constitutional questions . . . are to be avoided if possible." Id. at 1853. If the Court had made a constitutional ruling rather than construing the statute pursuant to the doctrine of constitutional avoidance, it would have had to consider extending Almendarez-Torres, a Fifth Amendment right to indictment case, to deny Haley the Fifth Amendment right to proof beyond a reasonable doubt of In re Winship, 397 U.S. 358 (1970). Haley, 124 S.Ct. at 1853. It declined to do so.

In Blakely v. Washington, 124 S.Ct. 2531 (2004), the Court again explicitly rejected the notion, upon which Almendarez-Torres was based, that the jury need only find whatever facts the legislature chooses to label elements, while those it labels sentencing factors may be found by the judge. Id. at 2539-40 and 2542 n.13. Instead, all "facts essential to punishment" must be charged in an indictment and proved to a jury beyond a reasonable doubt. Id. at 2536-37 & n.5. The Blakely Court did not mention the prior conviction exception in its holding.

In United States v. Booker, 125 S.Ct. 738 (2005), the Court reaffirmed its holding in Apprendi: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 756. Though the Court recited the prior conviction exception, it was not at issue in the cases before the Court, and the Court ignored Almendarez-Torres in its review of the relevant precedent. Id. at 748-49.

Charles Isler's criminal history category significantly over represents the seriousness of his criminal history and the likelihood that he will commit further crimes. The sentencing guidelines authorize a Sentencing Court to depart downward from the applicable sentencing guideline range if a "defendant's criminal history category" significantly over represents the seriousness of his criminal history or the likelihood that he will commit further crimes. U.S.S.G. Section 4A1.3. A sentencing Court may invoke U.S. sentencing Guidelines manual 4A1.3 to depart downward from the career-offender category if it concludes that the category inaccurately reflects the defendant's actual criminal history, within the meaning of 18 U.S.C. 3553(b).

The First Circuit court of appeals has recognized the ability of a Trial Court to allow for a 4A1.3 departure in career offender cases in certain situations. United States v Lindia, 82 F.3d 1154, United States v Perez, 160 F.3d, 87 (1st Cir), United States v Chhien, 266 F.3d 2001 (1st Cir), United States v Pettiford, 2004 U.S. App Lexis 5850(1st Cir 3 2004).

Mr. Isler is not a "career offender" as that term was meant to be. His prior criminal convictions involved a possession of cocaine charge where a small amount of powder cocaine was wrapped in a dollar bill. A $5.00 bay of heroin sold to an individual. A $10.00 bag of cocaine to an individual. A case where he had 10 rocks of crack cocaine worth $100.00, and another case of 18 rocks of crack cocaine worth $180.00. Although illegal and inappropriate and he accepts responsibility. He certainly is not the type of offender that deserves such a harsh sentence given the fact that he has not served ore than 5 years in State court and but for the police investigation another of his co-defendants this case would have stayed in the State Court where a much lower sentence would have been given.

Pursuant to the PSR, the Defendant has been determined to be a career offender. The guideline establishes the career-offender presumptive sentencing range by setting forth enhanced total offense levels, by reference to offense statutory maximums, and provides that a career offender's criminal history category in every case shall be category VI, the highest category level. U.S. Sentencing guidelines Manual 4B1.1. In addition, pursuant to the guidelines, Mr. Isler has a base offense level of 32 based on the maximum penalty that he was convicted of. Mr. Isler was convicted of Possession with intent to deliver not more than 5 Grams of cocaine base. In the PSR the Probation officer has assigned a base Level of 34 based on a maximum penalty of 30 years. However, the crime that the Jury convicted the Defendant had a maximum penalty of 20 years and not a maximum penalty of 30 years. The 30 year maximum penalty is arrived at by taking into consideration of a prior conviction and not jury found facts. In Shepard v. United States, 125 S. Ct. 1254 (2005), decided after Booker, the Court strongly suggested that the prior conviction exception should be viewed narrowly and that Almendarez-Torres v. United States, 523 U.S. 224 (1998), on which this exception is based, may soon be overturned.[2]

[2] This followed the troubled history of Almendarez-Torres, in which the sentencing factors/elements distinction upon which the Court relied in that case has now been abandoned:

Although the defendant in Shepard did not challenge Almendarez-Torres or the prior conviction exception, parts of Shepard make clear that five Justices would support overturning that decision and eliminating the exception. Therefore Defendant has a base

---

In Almendarez-Torres, the Court relied on a distinction between elements and sentencing factors to hold that a prior conviction that raised the maximum sentence was not required to be pled in the indictment. 523 U.S. at 226-27, 246-47. The dissent, written by Justice Scalia, would have construed the penalty provision as an element in order to avoid the "genuinely doubtful" question whether the Constitution permits an increase in the maximum punishment based on a fact, whether designated as an element or a sentencing factor, that has not been charged in an indictment and proved to a jury beyond a reasonable doubt. Id. at 251-60.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Court reserved judgment on the validity of Almendarez-Torres, since a prior conviction enhancement was not at issue, but noted that Almendarez-Torres "represents at best an exceptional departure from the historic practice [of requiring pleading and proof of factors increasing statutory maximums]," id. at 484, 487, emphasized that no question regarding jury trial or standard of proof arose in Almendarez-Torres, and explicitly stated that it may have been incorrectly decided and should be narrowly applied. Id. at 488-489. Furthermore, Justice Thomas in a concurring opinion renounced his swing vote in Almendarez-Torres. Apprendi, at 520-21 (Thomas, J., concurring).

In Ring v. Arizona, 536 U.S. 584 (2002), the Court explicitly abandoned any distinction for constitutional purposes between elements and sentencing factors. Id. at 605, 609.

In Dretke v. Haley, 124 S. Ct. 1847 (2004), the Court applied the doctrine of constitutional avoidance to Almendarez-Torres, stating: "Respondent contends that Almendarez-Torres should be overruled or, in the alternative, that it does not apply because the recidivist statute at issue required the jury to find not only the existence of his prior convictions but also the additional fact that they were sequential. These difficult constitutional questions . . . are to be avoided if possible." Id. at 1853. If the Court had made a constitutional ruling rather than construing the statute pursuant to the doctrine of constitutional avoidance, it would have had to consider extending Almendarez-Torres, a Fifth Amendment right to indictment case, to deny Haley the Fifth Amendment right to proof beyond a reasonable doubt of In re Winship, 397 U.S. 358 (1970). Haley, 124 S.Ct. at 1853. It declined to do so.

In Blakely v. Washington, 124 S.Ct. 2531 (2004), the Court again explicitly rejected the notion, upon which Almendarez-Torres was based, that the jury need only find whatever facts the legislature chooses to label elements, while those it labels sentencing factors may be found by the judge. Id. at 2539-40 and 2542 n.13. Instead, all "facts essential to punishment" must be charged in an indictment and proved to a jury beyond a reasonable doubt. Id. at 2536-37 & n.5. The Blakely Court did not mention the prior conviction exception in its holding.

In United States v. Booker, 125 S.Ct. 738 (2005), the Court reaffirmed its holding in Apprendi: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 756. Though the Court recited the prior conviction exception, it was not at issue in the cases before the Court, and the Court ignored Almendarez-Torres in its review of the relevant precedent. Id. at 748-49.

offense level of 32 and has a criminal history category of VI. The total sentencing range that he is subject to would therefore be 210-262 months, which is certainly a very severe sentence. If Mr. Isler were not characterized as a career offender then he would be facing a far lesser sentence. The purpose of the Sentencing Guidelines is to reduce disparities among defendants with similar records and allow flexibility to permit individualized sentences when warranted. *See* 28 U.S.C. § 991(b) (1) (B). This purpose is inconsistent with the application of the career offender provisions of 28 U.S.C. § 994(i)(1), which mandate a substantial term of imprisonment for defendants with a history of two or more prior convictions. *See* 28 U.S.C. § 994(i)(1). This inconsistency is especially dramatic when the career offender provisions are applied to low-level drug offenders with non-violent past offenses (such as Mr. Isler). Unfortunately these career-sentencing provisions lump together street sellers of narcotics with large wholesalers and violent, repeat criminals who have two or more prior convictions and therefore result in real disparities amongst individual defendants and their resulting conduct.

The career offender provisions of § 994(i)(1) do not consider the amount of narcotics involved in the current or past felonies. However, 18 U.S.C 3553(a) allows for the Court to take into consideration other factors such as All that is required is that the defendant "has a history of two or more prior Federal, State, or local felony convictions for offenses committed on different occasions." Section 4B1.1 of the Sentencing Guidelines requires that the career offender be eighteen years old, that the instant offense be a crime of violence *or* a controlled substance offense, and that the two prior felony convictions are *either* a crime of violence *or* a controlled substance offense. U.S. SENTENCING GUIDELINES MANUAL § 4B1.1 ("U.S.S.G."). When these requirements are met, the resulting sentencing recommendation for Mr. Isler is a prison term of 262 months to 327 months. This is the same sentencing recommendation as for a large wholesaler of narcotics or for a violent, repeat criminal whose past felony convictions are more serious than those of Mr. Isler

The Ninth Circuit noted in 1993 that the "penalty range is not sufficient to differentiate between two offenders with the same base offense level. The range afforded simply does not reflect the degree of differential in the seriousness of underlying criminal histories or offenses." *United States v. Reyes*, 8 F.3d 1379, 1385-86 (9th Cir. 1993). The court agreed that the Commission that drafted the Guidelines took into account varying penalties linked to different drug quantities, but neglected to consider the "sentencing ranges resulting in exceptional discrepancies." *Id.* at 1387 (citing *United States v. Ward*, 914 F.2d 1340, 1348 (9th Cir. 1990)). The Fourth Circuit has also noted the degree to which the determination of career offender status is "fraught with potential imprecision." *United States v. Adkins*, 937 F.2d 947, 952 (4th Cir. 1991). In particular, the court criticized the career offender definition for "encompassing an enormous variety of crimes . . . clearly [causing] a potential for wide discrepancy in the gravity of past antisocial conduct among 'career offenders.'" *Id.*

Mr. Isler's record although he has more than 2 prior convictions for drug offenses significantly over represents the seriousness of his criminal history and the likelihood that he will commit further crimes. Mr. Isler has in the past been convicted of very small

amounts of narcotics, which are more consistent with a user than a major drug dealer. The clear intent of the career offender punishment is to capture those individuals who are deserving of a very harsh sentence, not individuals such as Mr. Isler. In this case Mr. Isler was, according to the jury verdict, a minor player.

In addition, the base offense level as determined by the PSR has been extraordinarily magnified by a circumstance that bears little relation to his role in the instant offense. Mr. Isler because of two minor drug offenses has been categorized as a level 32, due to a miscalculation in the guidelines as well as being declared a career offender. In reality Mr. Isler played a very minor part in the offense. He was in effect at a house that drugs were brought into moments before the police executed a search warrant. The amount of drugs brought into the home according to the trial testimony was 142 grams of cocaine base. Mr. Isler was convicted of less than 5 grams of that total and he did nothing other than being present at the house. In, United States v Restrepo 936 F.2d 661 ( 9th cir), the court stated; "we conclude that where, as here, an offense level has been extraordinarily magnified by a circumstance that bears little relation to the defendant's role in the offense, a downward departure may be warranted on the ground that minimal participation exists to a degree not contemplated by the guidelines. The difference of a guideline based on less than 5 grams of cocaine base given Mr. Isler's history versus a career offender is substantial and he should be given some relief.

If he were not characterized as a career offender, then on the facts of this case he would be subject to a base offense level of 12 and a criminal history category of IV, with a guideline range of 21-27 months. Therefore Mr. Isler's sentence could be considered grossly disproportionate to others similarly situated. A number of courts have held that the career offender guideline produced a sentence that was greater than necessary to achieve the purposes of sentencing. See United States v. MacKinnon, 401 F.3d 8 (1st Cir. 2005) (remanding for re-sentencing where the district court, before Booker, found that the career offender guideline produced a sentence that was "obscene" and "unwarranted by the conduct."); United States v. Hubbard, 369 F. Supp.2d 146, 148 (D. Mass. 2005) (imposing sentence of 108 months rather than 188-235 month career offender range based on diminished capacity from appallingly traumatic childhood which "directly precipitated his life on the streets and his conduct as a career offender"); United States v. Williams, 372 F. Supp.2d 1335, 2005 WL 1378764 (M.D. Fla. 2005) (sentencing defendant to 204 months because career offender sentence of 360 months to life was out of character with the seriousness of the offense, was not necessary to achieve deterrence or incapacitation, and would undermine respect for law); United States v. Person, 377 F. Supp.2d 308 (D. Mass. 2005) (departing downward from 262 to 84 months where career offender status based on one drug distribution and resisting arrest "grossly overstated" seriousness of defendant's criminal history); United States v. Carvajal, 2005 WL 476125, **5-6 (S.D.N.Y. Feb. 22, 2005) (imposing sentence of 168 months because career offender guideline of 262 months was "excessive," and would be "greater than necessary, to comply with the purposes" set forth in the statute, including rehabilitation, which cannot be achieved without hope).

In a recent sentencing in United States v. Burhoe, No. 1:01-cr-10464-RCL (D. Mass.), the Judge in imposing 77 months instead of a career offender sentence of 151 months, in part because the defendant had a significant work history and thus was not in his personal profile a "career offender."

> Career Offender guideline, USSG 4B1.1, pegs offense level to statutory maximum for the offense of conviction and automatic CHC VI, requires only two prior felony convictions of either a "crime of violence" or a "controlled substance offense." The Career Offender provision provides no mechanism for evaluating the relative seriousness of the underlying prior conviction. Instead of reducing unwarranted sentencing disparities, such a mechanical approach ends up creating additional disparities because this Guideline instructs the court to substitute an artificial offense level and criminal history in place of each individual defendant's precise characteristics. This substitution ignores the severity and character of the predicate offenses and equates relatively minor distribution convictions with violent and egregious drug trafficking crimes for sentencing purposes.@ United States v. Moreland, 366 F.Supp.2d 416, 424 (S.D. W. Va. April 27, 2005) (defendant with career offender range of 30 years to life received 10 years because A[t]wo relatively minor and non-violent prior drug offenses, cumulatively penalized by much less than a year in prison@); United States v. Carvajal, 2005 WL 476125, **5-6 (S.D.N.Y. Feb. 22, 2005) (career offender guidelines are "the same regardless of the severity of the crimes, the dangers posed to victims' and bystanders' lives, and other appropriate criteria").

In addition Mr. Isler's co-defendant Bilal-Rashid who is not a career offender will receive a sentence in the range of 21-27 months. The First circuit has spoken on this issue as well, in United States v. Lewis, 375 F Supp. 2d. 1 (1st Cir. 2005) where an equally culpable co-defendant received a lesser sentence (defendant's sentence because of his criminal history was significantly higher than co-defendant's based on same charges); At re-sentencing, the Court imposed a term of imprisonment of 264 months (**180 months on Counts I** and II and 84 months consecutive on Count III), 36 months supervised release with the same special conditions previously imposed, and a $ 300 special assessment. The variance between 319 months and 264 months is occasioned primarily by the Court's desire to reduce somewhat the disparity between Defendant **Lewis'** sentence and that of his co-defendant who had received a term of **130 months**. Also, United States v. Colby, 367 F.Supp.2d 1 (D. Me. 2005) (where first defendant was sentenced after Blakely and before Booker and thus received a sentence of one month incarceration and 7 months home detention based only on facts admitted, other defendant sentenced after Booker would receive same sentence though his guideline range was 37-46 months based on judge found facts); United States v. Revock, 353 F.Supp.2d 127 (D. Me. 2005) (similar); United States v. Gray, 362 F.Supp.2d 714, 718-19 (S.D. W. Va. 2005) (imposing same sentence as co-defendant though guidelines range was different because they were equally culpable); United States v. Thurston, No. 1:98-cr-10026-MLW (D. Mass.), Statement of Reasons June 17, 2005 (imposing sentence of three months where guideline range was 63-78 months, to avoid unwarranted disparity with co-defendant and promote respect for law).

Also, Mr. Isler asks this Court to consider a departure based on the disparity of State vs. Federal sentences see United States v. Snyder, 136 F.3d 65 (1st Cir. 1998), in which the district court was reversed for such a departure, now possibly available under 3553(a)(6), depending on the circumstances. See United States v. Moreland, 366 F.Supp.2d 416, 422-23 & n.2 (S.D. W. Va. April 27, 2005); United States v. Wilkerson, 411 F.3d 1 (1st Cir. June 9, 2005) ("disparate treatment between federal and state court sentences"). Mr. Isler was charged in both state and federal Court for the same offense, he received at a minimum double the sentence he would have received in the State Court.

Wherefore the defendant, Charles Isler requests that this Honorable Court grant his request for a downward departure based on the fact that the career offender category significantly over represents the seriousness of his criminal history in addition to the other issues raised by the defense and in light of recent case law creating guidelines as advisory and instead placing more emphasis on the 3553(a) factors, and the unlikelihood that he will commit further crimes, within the meaning of 18 U.S.C. 3553, as well as the other issues raised in this memorandum and argument before the Court.

Respectfully submitted,
Charles Isler
By his Attorney,

Terence Livingston, Esq.
681 Smith Street
Providence, RI 02903
(401) 861-8121

***CERTIFICATE OF SERVICE***

I hereby certify that a true and accurate copy of the within Motion was hand delivered to: Adi Goldstein, United States Attorney, US Attorney's Office, Fleet Center, 8th Floor, 50 Kennedy Plaza, Providence, RI 02903, William J. Murphy, Esq. 127 Dorrance Street, Providence RI 02905, on this 15th day in February 2006.